IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Kathy Delrosso               :

    Plaintiff         :  (Case No. 3:12-CV-1467)

    v.                :

Carolyn W. Colvin[1]     :  (Judge Richard P. Conaboy)
Acting Commissioner
of Social Security       :

    Defendant        :

**FILED
SCRANTON**

JAN **2 3** 2014

Memorandum

PER_____ _CR_
DEPUTY CLERK

## I.   Background.

We consider here Plaintiff's appeal from the Commissioner's May 17, 2011 denial of benefits per decision of Administrative Law Judge Michelle Wolfe.  The ALJ's decision was upheld by the Appeals Council's May 31, 2012 denial of Plaintiff's Request for Review. Plaintiff seeks Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  Plaintiff alleges entitlement to DIB "retroactive to November 14, 2008 based upon her severe psychological conditions, limitations and disabilities." (Doc. 12 at 5).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

The Plaintiff was 47 years of age at the time (April 14, 2011) of her hearing before the ALJ.  (R. 38).  She alleged an onset date of November 14, 2008, the last date that she was employed.  (Doc. 12 at 17).  Prior to that date, she had been hospitalized with a severe panic attack on or about August 10, 2008 and had been experiencing sporadic but extreme anxiety at work from the time of her hospitalization until she left her former employment.  (R. 55-56).  She has not engaged in substantial gainful activity since November 14, 2008. (Record 46).

At the hearing before the ALJ, the Plaintiff testified that she had been experiencing panic attacks, debilitating anxiety, rapid mood swings, and periods of uncontrollable crying since the date she last worked.  (R. 47-55).  Plaintiff also testified: (1) that she sleeps seven to nine hours each night and naps twice daily for three to four hours at a time (R. 51-53; (2) that she belongs to no clubs, organizations or churches and never attends social events (R. 49); (3) that she has been diagnosed with carpal tunnel syndrome and has difficulty using her left hand (R. 47-49 and 53-54); (4) that she does not socialize with friends or family and has taken no vacations or trips since November of 2008; and (5) that she never leaves her home alone and goes out approximately once a month, always accompanied by her boyfriend, to shop for food. (R. 50-51 and 60-64).  She testified further that she has "burned bridges" with her friends, former co-workers and even her daughter

2

(R. 61-63) and that she could not be a reliable employee (R. 63).

The ALJ found, inter alia: (1) that the Plaintiff is afflicted by bipolar disorder and panic disorder and that these are "severe impairments" (R. 14); (2) that the claimant is unable to perform her past relevant work as a medical receptionist (R. 23-24); and (3) that the Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels as long as she "is limited to simple routine tasks; a low stress work environment defined as occasional decision making and occasional changes in work setting; occasional interaction with co-workers and supervisors; and working with things rather than people." (R. 16). The ALJ also found that Plaintiff can perform a variety of jobs all of which involve medium or heavy exertion that are available in the national economy. (R. 24).

Plaintiff asserts, essentially, that the ALJ erred: (1) in concluding that the collective weight of the medical evidence did not support a finding of disability; and (2) in subordinating the opinions of several treating physicians and/or psychologists to that of a consulting psychologist who merely examined the treatment notes of some of the treating professionals but never had personal contact or conversation of any kind with the Plaintiff.  (Doc. 12 at 5).

## II.  Standard of Review.

This Court's review of the Commissioner's final decision is

3

limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. §405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d. Cir. 1999). A reviewing Court is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel* 186 F.3d 422, 427 (3d. Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. *Perales, 402 U.S. 389, 401 (1971); See also Chandler v. Commissioner of Social Security*, 667 F3d. 356, 359 (3d. Cir. 2011). Therefore, we will not set aside the Commissioner's decision if it is supported by substantial evidence, even if we would have reached a different factual conclusion. *Hartranft supra* at 360 (citing *Monsour Medical Center v. Heckler*, 806 F2d. 1185, 1190-91 (3d. Cir. 1986). Even where the Commissioner's factual findings are supported by substantial evidence, a Court may review whether the Commissioner, in making his findings, applied the correct legal standards to the facts presented. *Friedberg v. Schweiker*, 721 F.2d, 445, 447 (3d Cir. 1983). An AlJ's decision can only be reviewed by a court based upon the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F3.d 589, 593 (3d. Cir. 2001).

Significantly, the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. See

4

*Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d. Cir. 1979). Social Security Disability proceedings are not strictly adversarial, but rather the Social Security Administration is required to provide an applicant with assistance to prove his claim. Id. "These proceedings are extremely important to the claimants, who are in real need in most instances and claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health Education and Welfare*, 497 F.2d, 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and explicitly weighing all evidence. *Dobrowolsky, supra* at 406. Further, the Dobowolsky court noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut is to be strictly construed." Id.

Finally, the Third Circuit has recognized that it is necessary for the Secretary to analyze all evidence. If he has not done so and has not sufficiently explained the weight he has given to all probative exhibits, "to say that his decision is supported by substantial evidence approaches an abdication of the Court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky, supra* at 407. In *Cotter v. Harris*, 642 F.2d 700, 705 (3d. Cir. 1981), the Circuit

5

Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected.  "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."  *Cotter, supra* at 706-07. Only where the ALJ rejects conflicting probative evidence must he fully explain his reasons for doing so.  See, e.g., *Walker v. Commissioner of Social Security*, 61 F. App'x 787, 788-89 (3d. Cir. 2003) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d. Cir. 1983).

## III. **Plaintiff's Allegations of Error.**

The Plaintiff's allegations of error may be combined into one critical question - - that being whether the ALJ unreasonably subordinated the conclusions of several treating physicians and/or psychologists to that of a consulting psychologist who merely examined the treatment notes of some of the medical professionals who examined Plaintiff. [2]

The record indicates that Plaintiff has been seeking help for psychological problems since at least 1991.  She saw Dr. Matthew

---

[2] Plaintiff also contends that the limitations imposed by her carpal tunnel syndrome (R. 45-55, 62) were not factored into the hypothetical question posed to the Vocational Expert who concluded that she was capable of doing heavy exertional work.  Because the Court's ruling on the claimant's psychological claim is dispositive, Plaintiff's argument based upon the propriety of the hypothetical question has not been addressed.

6

Berger, a psychiatrist, on two occasions in December of 2007. Dr. Berger's office notes relating to his visits with Plaintiff indicate that she had seen him 12 to 15 years earlier, that she had seen numerous other psychologists in the interim, and that she had a previous psychiatric admission secondary to a drug overdose in February of 1991. (R. 164-169). Thus, while Dr. Berger did not make any findings that could properly be construed as concluding that Plaintiff was disabled when he saw her in 2007, his treatment notes well establish that Plaintiff has a long history of psychiatric problems and treatment going back at least 16 years and that, in his professional opinion as her treating psychiatrist, she was suffering from generalized anxiety disorder and major depressive disorder as early as December, 2007.

Salvatore A. Lawrence, M.D., Plaintiff's family doctor since 1989, diagnosed her as suffering from bipolar disorder and major depression in March of 2009, described the treatment of these disorders as a "huge challenge", and determined that the Plaintiff was "unable to return to work until these symptoms are controlled. This can easily be for a prolonged period of time. I cannot be more precise than this." (R. 331).[3]

---

[3] The ALJ noted that Dr. Lawrence acknowledged that "he was not the best doctor to treat her (Plaintiff's) illness" and concluded that Dr. Lawrence's opinion was entitled to "little weight" because he was not a psychiatrist. The ALJ also devalued Dr. Lawrence's opinion because the Plaintiff's maintenance of a relationship with a boyfriend, her ability to speak normally, and her assessment that her medications were helpful somehow deprived Dr. Lawrence's opinion of validity. (R. 22) The Court must observe that many mentally ill people remain in relationships, speak

In September of 2009, Plaintiff saw Lisa Starr, M.A. a licensed psychologist, on two occasions.  Dr. Starr authored a report dated September 13, 2009 that detailed Plaintiff's "long-standing psychiatric symptoms".  Dr. Starr indicated further that as of September 13, 2009, Plaintiff was not "currently able to perform any job on a regular basis."  She concluded her report by stating that she was hopeful her therapeutic relationship with the Plaintiff would help her at some future time to "become a productive member of the workforce."  (R. 334-35).

On January 10, 2010, Plaintiff was referred to Elizabeth Ciaravino, Ph.D, by the Bureau of Disability Determination for a clinical psychological evaluation.  Dr. Ciaravino noted that Plaintiff's "[I]mpulse control and judgment are tenuous.  She does note that she has extreme amount of difficulties controlling angry impulses at times especially when dealing with authority.  Insight and judgment are tenuous."  Dr. Ciaravino, like each of the previously mentioned physicians and psychologists, diagnosed bipolar disorder and stated that Plaintiff's "[O]verall prognosis is extremely guarded given the extent to which personality features interfere with day-to-day functioning."  Dr. Ciaravino found, inter alia, that Plaintiff had marked impairments in terms of her

---

normally, and are, to some extent, helped by their medications. The ALJ's reasons for discounting Dr. Lawrence's assessment are unconvincing. Moreover, Dr. Lawrence's acknowledgment about not being the "best doctor to treat Plaintiff's illness" seems more an indicator of the seriousness of Plaintiff's condition than an admission of inadequacy on his part.

8

abilities to understand and remember detailed instructions, to carry out detailed instructions, to make judgments or simple work-related decisions, to interact appropriately with the public, to interact appropriately with supervisors, to interact appropriately with co-workers, to respond appropriately to work pressures in a usual work setting, and to respond appropriately to changes in a routine work setting.  In sum, Dr. Ciaravino's assessment tends to support the conclusion that, given Plaintiff's limitations and impairments, it would be impossible for her to work in virtually any occupation.  (R.212-216).

In August of 2010, Plaintiff was evaluated at the Allied Services Rehabilitation Hospital in Scranton, Pennsylvania, by John Harvey, Ph.D., a licensed psychologist, and Jody Doherty, M.S., a Psychological Examiner.  After interviewing Plaintiff over a period of several days and subjecting her to numerous tests, they concluded jointly that Plaintiff met the diagnostic criteria for both bipolar disorder (estimated moderate to severe) and panic disorder.  They found further that "the ideal scenario for Kathy would be to engage in intense outpatient therapy on a bi-weekly basis with ongoing monitoring of her medications."  They closed by opining that "...it is reasonable to anticipate that she could return to the world of work within one to two years."  Thus, given that the date of the Harvey/Doherty evaluation was August 27, 2010, these mental health professionals believed that a best-case

scenario would find Plaintiff returning to work in approximately
September of 2011.   (R 340-356).

Each of the health care professionals whose conclusions are
recorded above had the benefit of interviewing Plaintiff at least
once.   Each had the opportunity to study her mannerisms, observe
her facial expressions, listen to her tone of voice, evaluate her
complaints, and engage in some form of discourse with her.   Drs.
Lawrence, Starr, Ciaravino and Harvey all determined that Plaintiff
was disabled. The ALJ's decision, however, subordinated the
collective opinions of these professionals to that of Mark Hite,
Ed.D., a psychologist who reviewed Plaintiff's file but did not
meet with her.   Dr. Hite found Plaintiff's complaints to be
partially credible based upon his February 17, 2010 review of her
medical file.[4]   Dr. Hite specifically addresses the conclusions
reached by Dr. Ciaravino by stating:

> The residual functional capacity assessment is
> different than the opinions expressed by Elizabeth
> Ciaravino, Ph.D., in the report received 1/19/10 due to
> inconsistencies with the totality of the evidence in
> the file.   Some of the opinions cited in the report are
> viewed as an overstatement of the severity of the
> claimant's functional restrictions.   The examining

---

[4] Dr. Hite's review did not include nor does it address the evaluations conducted by Dr.
Harvey and Ms. Doherty at Allied Services because these evaluations post-dated Dr. Hite's review of
the records.  His review makes no particularized reference to the findings of Dr. Starr.

source statements in the report concerning the
claimant's abilities in the areas of making
occupational adustments, making performance
adjustments, and making personal and social adjustments
are not consistent with all of the medical and non-
medical evidence in the claims folder.  It appears that
the examining psychologist relied heavily on the
subjective report of symptoms and limitations provided
by the claimant.  However, the totality of the evidence
does not support the claimant's subjective complaints.
The psychologist's report appears to contain
inconsistencies.  Therefore, the psychologist's opinion
in this report is less persuasive.  The evidence
provided by the examining source reveals only a snap
shot of the claimant's functioning and is an
overestimate of the severity of her limitations.
Therefore, great weight cannot be given to the
examining source's opinion.  The psychologist's opinion
is without substantial support from the other evidence
of record, which renders it less persuasive.
Therefore, the report submitted by Elizabeth Ciaravino,
Ph.D., received 1/19/2010, is given appropriate weight
in this assessment.

The claimant is able to meet the basic mental

11

>       demands of competitive work on a sustained basis
>       despite the limitations resulting from her impairment.
>       (R 232-233).

    The Court, having thoroughly reviewed all medical evidence,
finds that Dr. Hite's conclusions, which stand in stark contrast to
the evaluations of five other health care professionals, including a
medical doctor, who treated or, at least, personally evaluated the
Plaintiff, cannot be seen as the requisite "substantial evidence in
the record" required by *Richardson v. Perales, supra*.   The inherent
importance of actually seeing a patient before reaching conclusions
on that person's mental status is inadvertently acknowledged by the
government in its attempt to impugn Dr. Starr's report because she
"admitted to only seeing Plaintiff twice." (Doc. 13 at 9).  This is
particularly ironic since the person the Secretary relied upon in
this case never saw the Plaintiff at all.  Moreover, Dr. Hite's
conclusions that the claimant's "subjective complaints are not
supported by the evidence" and that Dr. Ciaravino's report "contains
inconsistencies", are unaccompanied by any cogent explanation of why
the record does not support her complaints or just what is
"inconsistent" about Dr. Ciaravino's report.  Accordingly, the Court
must conclude that Dr. Hite's report does not constitute substantial
evidence and that the clear weight of the evidence in this file is
that Plaintiff has been disabled due to a combination of psychiatric
illnesses since March 16, 2009.   (See Dr. Lawrence's letter of

12

3/23/2009, R. 331).

While the Court is aware that, in an appropriate case, an ALJ may rely on the opinions of non-examining physicians and psychologists where their opinions are consistent with the record as a whole, the Court finds that Dr. Hite's opinion in the instant case is absolutely inconsistent with the findings of five other medical professionals with at least equivalent credentials. [5] Moreover, these other medical professionals all had the critical advantage of studying Plaintiff during personal encounters. The Social Security Administration's internal regulations recognize that, generally, more weight is given to the opinion of an examining physician than to a consulting physician and that this is so because treating sources "are likely to be the medical professionals most able to provide a complete, longitudinal picture and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, <u>such as consultative examinations</u> or brief hospitalizations." (Emphasis supplied.)  See 20 C.F.R. § 404.1527(c)(1) and (2).

---

[5] The Court also sees some irony in the fact that Dr. Ciaravino, whose opinion Dr. Hite found "inconsistent", was, like Dr. Hite, retained by the Bureau of Disability Determination to examine the Plaintiff only one month after Dr. Ciaravino issued her report. This fact suggests a "cherry picking" approach to the evaluation of the evidence in this case. The Court also notes that Dr. Hite's apparent assumptions that the Plaintiff goes out alone, shops, and prepares complete meals (R. 232) is not supported by the Hearing Transcript (R. 50-51).

This is simply not a case where the consulting physician's report may be viewed as the quantum of "substantial evidence in the record" (as required by *Plummer v. Apfel, supra*) necessary to support the Commissioner's decision.  Consequently, the Court finds that the ALJ's decision, due to its unreasonable deference to the consultant's report, ran counter to the clear weight of the evidence, that the "evidence" relied upon by the ALJ was not sufficient to support the conclusion she reached, and that the ALJ's decision failed to articulate a reasonable basis, as required by *Dobrowolsky v. Califano and Richardson v. Perales supra*, for rejecting the collective opinions of all the medical professionals who had personal contact with the Plaintiff.  An Order consistent with the reasoning in this memorandum will be filed contemporaneously herewith.

Honorable Richard P. Conaboy

Dated: January 23, 2014

14